THE STATE, EX REL. SAMUEL A. HELFER, PROSECUTOR, v.
C. IRVING SIMON.

1. "An act to authorize cities of the second class to extend the term of office and fix the rate of compensation of certain officers therein," passed May 3d, 1889 (*Pamph. L., p.* 328), is local and special, in regulating the internal affairs of cities, within the constitutional prohibition.

2. The appointment of a city physician for Hoboken by the mayor, and confirmation by less than a majority of councilmen, is void under this act, but the subsequent election by four councilmen, a majority of a quorum, is valid under the charter.

3. A *certiorari* to review the resolution of council making an appointment under the special law will not stay another election under the charter.

On rule to show cause why a writ of *quo warranto* should not issue to show by what warrant or authority the respondent claims to use the office, &c., of city physician of the city of Hoboken.

Argued at February Term, 1891, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the relator, *William S. Stuhr.*

For the defendant, *William D. Daly.*

The opinion of the court was delivered by

SCUDDER, J. On July 23d, 1889, the mayor of the city of Hoboken appointed the relator city physician for the term of three years, ending May 1st, 1892, under the act of May 3d, 1889. *Pamph. L., p.* 328. This law, in terms, authorizes such appointment to be made, with the confirmation of the common council by a majority vote. The communication from the mayor of his nomination of the relator for city physician was received by the common council at a meeting held July 23d, 1889, and it appears by the minutes that four councilmen voted to confirm the nomination, three voted

against it and one was absent. The entire number of council-
men was eight, two from each of the four wards into which
Hoboken is divided. A majority vote of common council
would be five votes, and four would not be sufficient to con-
firm the nomination if this law is to govern the appointment.

We are, however, satisfied that it is not constitutional.
The title of the act is "An act to authorize cities of the second
class to extend the term of office and fix the rate of compensa-
tion of certain officers therein." The first section enacts
" that in all cities of the second class in this state, wherein
they have an officer known as city physician, the mayor of
any such city shall appoint such officer, and the board of·
aldermen or other legislative body of said city, by a majority
vote, confirm said appointment," &c. The second section is
merely a repealer.

The title is not general, but limits its application to all
cities of the second class, and relates to extending the term
and fixing the compensation of certain officers therein. The
body of the act is even more objectionable than the title, for
it confines its operation to cities of the second class wherein
they have an officer known as city physician ; this is a sub-
division of classification that makes the purpose of the act
very apparent to control the appointment of city physician in
certain cases. Such legislation is unconstitutional, and the
title of the act, though attempting to be more general in its
terms, is local and special in its object. It is not within the
ruling in *Bumsted* v. *Govern,* 18 *Vroom* 368, where the gen-
eral purpose and title of the act were to produce uniformity in
the selection and duties of directors of the boards of chosen
freeholders of the state, though it applied alone to the county
of Hudson ; for this title is not general, but distinctive and
exceptional, as it relates to some cities and certain officers in
those cities, and the body of the act is still further limited to
the appointment of a single officer.

*Mortland* v. *Christian,* 23 *Vroom* 521, gives the principle
of classification in a statute relating to the counties and
municipalities of this state and their internal affairs, based on

their population, that the legislative object must be one naturally incident to population. In this case there has been no reason assigned, nor is it apparent, why an officer known as city physician, in a city of the second class, should have a different appointment, with a term fixed by the mayor and an annual salary to be allowed by the legislative body confirming the appointment, from a physician to be appointed and compensated in a city of the first class, or of the third class. Population cannot have any just reference to this distinction between these classes by which the middle class is separated from the others. The act regulates the internal affairs of cities; it is local and special within the constitutional prohibition, and void; and the appointment of Helfer under it is also a nullity.

It appears that, subsequent to this action by the mayor and common council, the latter met December 3d, 1889, and four councilmen voted for the appointment of Helfer, two against it, one declined to vote, and one was absent. It is not necessary to determine what would be the legal effect of the refusal to vote by a member of council who was present when the vote was taken, and the result announced that the nominee was elected, for, without his vote, there were four cast for Helfer, which number, being a majority of a quorum present, was sufficient to elect. *McDermott* v. *Miller*, 16 *Vroom* 251. The charter of Hoboken enacts that the councilmen, or a majority of them, in council assembled, by not less than four concurring votes, shall and may, from time to time, elect certain officers; and section 32 says that a majority of the council shall constitute a quorum for the transaction of business. A part of their business is to protect the health of the city, and while a city physician is not named in section 40, giving the number of votes required, the power of a quorum of seven councilmen to elect by a majority of four can hardly be doubted where there is no special restriction. It is further objected that, at the time of this second appointment of Helfer by the common council, the resolution of July 23d, 1889, under which he first claimed, had been removed to this court

by *certiorari*, which was still undetermined. It is contended that this operated as a stay of all further proceedings by council to elect a city physician *pendente lite. Simon* v. *Hoboken*, 23 *Vroom* 367. The writ would stay any action under the resolution. While it was under review in this court it would act as a *supersedeas* in the cause or matter removed for revision (*Hunt* v. *Lambertville*, 17 *Id.* 59), but it would not prevent the council from passing another resolution electing a city physician under another law, if, in their judgment, the health of the city required it. This court having determined that the first action of the mayor and common council was a nullity, nothing was in the way of another appointment which was legal by the charter of the city. So far as the public are concerned, it is more important that the duties of the office shall be performed than that any particular person shall be appointed to fulfill them. This second appointment, made under a different statute, the charter of the city, and by a subsequent and distinct resolution, must stand or fall upon its own merits.

The rule to show cause will be made absolute, and a *quo warranto* issued.